*C. F. Watts*, for Defendant in Error.

---

## ADVERSE POSSESSION—STREETS.

[Lucas Circuit Court, October 17, 1896.]

† CHARLES S. ASHLEY V. CITY OF TOLEDO.

Haynes, Scribner and King, JJ.

1. TITLE TO PROPERTY IN PUBLIC STREETS.

   Where a certain tract of land was laid out in lots and streets and a map of the same made, but which was not duly recorded in the county records, but was acknowledged by the owners of such lands after the execution of certain mortgages upon the property, the owners of such lands are bound by such map, and any streets that have been laid out and dedicated thereon and if the city in turn had done everything the law required it to do to accept the dedication of such streets, the title to the property in such streets will be held to remain in the city, unless lost by adverse possession.

2. ALLEGED CONVEYANCE OF TITLE TO PROPERTY IN A STREET.

   A grantor of a certain lot, who at the same time conveys all his right and title to a certain street adjoining such lot, such a conveyance would absolutely convey nothing whatever, unless the grantor owned the property in such street.

3. ACQUIRING TITLE BY ADVERSE POSSESSION.

   Where certain lands have been laid out in lots and streets, the streets having been dedicated and accepted by the city, and the owner of one of the lots has fenced it up together with one of the streets, but has allowed the fence to decay and become out of repair, and the public travel through such lot along the line of such street, back and forth at will, such owner of the lot will not be

† Affirmed by Supreme Court; unreported, 59 O. S., 631.

held to have acquired title in the street by adverse possession as against the city, even though such fence has been allowed to remain for a period of twenty-five years or over.

APPEAL.

KING, J.

The amended petition of the plaintiff sets forth that he is the owner and in the actual possession of certain premises, which he describes; that the defendant sets up and claims an interest in said real estate adverse to the plaintiff. The premises are described as 33 feet in width fronting on Jefferson street, and running back from Jefferson street about 140 feet. The petition alleges that the defendant claims that the property in question is a part of Fifteenth street, and is the property of the defendant for street purposes; alleges that it is not a part of Fifteenth street; that the defendant has no interest in the property; that the same is the private and exclusive property of the plaintiff, and that the plaintiff and those under whom he claims have been in the actual, open, notorious, continuous and adverse possession of the premises for twenty-five years next before the commencement of this action; that if the defendant ever had any interest in the premises, it now has no right or interest therein, and its claim thereto is null and void. The plaintiff prays that his title may be quieted.

The answer of the defendant denies the title of the plaintiff, and claims that this property in question is a part of Fifteenth street, being a street which runs at right angles with Jefferson street.

The facts in this case are somewhat voluminous, and cover quite a period of time and considerable record evidence; but this evidence and these records have been submitted to this court in three other cases, in which decisions were rendered, and those decisions cover and embrace many of the points made in this case, so that it will be unnecessary for me to repeat what has been said in those other cases, so far as the same is applicable to this case. But in some features this case is different from any of the others before the court. In 1837 certain persons were the owners of a tract of land in this city which was undivided. Among them, Hiram Pratt and William E. P. Taylor owned an undivided one-sixteenth part of the tract. The owners undertook about that time to make an agreed partition among themselves, and certain of them made deeds, and among others, there was deeded by one of these owners, James Myers, to Pratt and Taylor, the owners of the undivided sixteenth, certain lots by numbers, these lots, they said in that conveyance, were deeded by numbers, as described on a plat of said tract recorded in the recorder's office of Lucas county, in Vol. 2, page 510; and the lots in the tract of land known as the Bartlett farm, constituting part of this tract, are numbered in the conveyance 13, 25, 56, 70 and 75. Other conveyances were made to other parties, the purpose of all them being a partition of the property. The map referred to as having been recorded in Vol. 2, page 510, was not so recorded. The page referred to is blank. A copy or a tracing of that map is presented here in evidence. I think it is quite clear from the evidence that on or about the time when these deeds were made, this map, if not recorded, was placed on file, or placed within the recorder's office, where it has remained ever since. So far as Pratt and Taylor are concerned, who were the owners, as I have stated, of an undivided one-sixteenth of this property, they in 1840 mortgaged the lots above named, together with some other property, to Charles H.

Alley, president of the Bank of Commerce of Buffalo, to secure $100,000, in a mortgage which, among other things, describes these lots by num-bers, and it contains this language : "All those certain lots in the Port Lawrence division of Toledo, Lucas county, in the state of Ohio, which are designated on a map of said division in the office of the recorder of said Lucas county." Following the description down until it comes to the particular tract of land known as the Bartlett farm, it says : "Also part of that part of Toledo aforesaid, and being part of the south-east fractional quarter section thirty-five, in township nine south, of range seven east, being part of the Bartlett farm so-called, and which is desig-nated on said map as lots numbers 13, 25, 56, 70 and 75." The evidence shows the inability of these persons to make an amicable partition of this property. There was, however, about the same year, 1837, another map of this entire tract of land made. The county surveyor of this county appointed one Robert Gower to make a survey of the lots and lands in Toledo, and such a survey was made by Robert Gower in 1836 and 1837, and that map is known in conveyances and other-wise as the Gower map: That divided this Bartlett farm into lots the same as it divided all the rest of the territory, and num-bered them ; and upon the Gower map were laid out the streets which cross these tracts of land in both directions, and there is upon it Jefferson street, and Madison street, parallel, and there are 14th, 15th, and 16th streets marked upon the plat, and the land between these streets is laid off into lots and numbered. So far as that portion of the map referred to in the partition proceedings is concerned, the numbers of the lots agree with those on the Gower map, and their locations are identical, as are the streets laid out, that is, upon that part of the map called the Bartlett farm. This Gower map, I should say, was never recorded until 1876. There is no evidence that it was ; but it is evident that it was on file in the re-corder's office ever since it was prepared, certainly since the year 1845. This Gower map, it seems, is not the one referred to in the deeds made in pursuance of the partition, but in 1840 it was acknowledged by several of the owners of this property, and among others, Messrs. Pratt and Tay-lor, who made this mortgage, appear to have signed and acknowledged it. The acknowledgment shows that it was certified to in October, 1840, and it recites that Pratt and Taylor, by their authorized agent, had ac-tually seen the map and signed it in January, 1840.

This mortgage was foreclosed in 1845, and the property was sold under foreclosure proceedings in 1846, and the title to the subsequent holders of the property grows out of that foreclosure proceeding. When they came to foreclose the mortgage upon this property, it was found that this partition had never been carried out, as some of the owners of the property had never executed deeds, and there was no actual partition of the property; that although Pratt and Taylor were the owners of an un-divided one-sixteenth of the whole, still, they hadn't the whole title to the lots described in the mortgage; and the court, without an issue made up for that purpose, proceeded to correct the mortgage, and to decree that it should cover, instead of the lots named in the mortgage, the undivided one-sixteenth of this entire tract of land, and that one-sixteenth was ordered to be, and it was sold in that proceeding.

It is now argued that since this Gower map, upon which these streets were laid out and these lots numbered and set forth was not acknowl-edged until October, 1840, by Pratt and Taylor, and they had conveyed their interest in the premises by a mortgage, all but the equity of re-

demption, in April of that year, that they could not by an acknowledgment upon this map dedicate any portion of that property for street purposes so as to affect the interest of the mortgagee. It is a sufficient answer to that, it seems to me, to say that the mortgage by its description covered certain lots of land that it is conceded do not touch upon 15th street at this point, and are not near the lot of land here in litigation. It did not purport to convey the undivided one-sixteenth part of that property, and it never did convey the one sixteenth part of the tract until the decree of the court was made in 1845, purporting to correct the description. It has been held that a mortgage does not take effect as to third persons until it is recorded. I cite 10 O. S., 159, 1 O. S., 110, 26 O. S., 474, and a number of other authorities may be cited to support that proposition. This mortgage, when it was originally made, covered lots 25, etc.; when corrected, it covered the undivided one-sixteenth part of this property. But the correction was made in 1845. The Gower map was acknowledged, as it was conceded, in 1840, and thereafter it became a part of the records of this county. It was not actually recorded until 1876, but it was on file in the office of the recorder, and as it clearly set fo.th this property, and was actually executed, signed, and acknowledged by the owners of the very property or of the interest in the very property that is here in controversy, it must be true that they were bound by it. It was also by resolution of the city council, duly accepted, so far as the streets are concerned.

But this is only a part of the evidence in this case. This property passed through various proceedings that I need not refer to. There was a partition proceeding in court and the interest of Pratt and Taylor came into the name of Jesup W. Scott, and he conveyed th's land to Ezra Bliss by a deed dated October 30, 1849. The lot owned by the plaintiff in this case is numbered upon all these maps as lot 6 of Mott's addition, and is a part of this original tract. It appears to be bounded on the Gower map by 15th street and Jefferson street on two sides. This conveyance purported to convey from Scott and wife to Ezra Bliss a number of different lots, and among others, lot 6, the description reading, "also lot six of Mott's addition, adjoining lot 1570." Then it proceeds as follows:

Lots 1645 and 6 not having been legally laid out by their owners, as is believed, extend to the middle of 14th street, 15th street, and Jefferson street extended, the five lots first above named are bounded by 14th street, Madison street and 15th street of the Gower map, as adopted by the city, and the other two as above stated by 14th, 15th and Jefferson streets, if extended on their middle lines respectively.

Here is a d stinct recognition by this owner of the Gower map. He describes all this block and bounds it by the streets that are laid out upon it. When he comes to lot 6 he simply expresses the opinion that these lots were not legally laid out. Why that is so the deed does not state. They are laid out by precisely the same proceedings and the same plats as are all the other lots. And Pratt and Taylor, through whom this property came by virtue of this mortgage, came, executed this map, and recognized it, and made their dedication upon it. Scott recognizes the map and the streets upon it, but expresses the opinion that these two lots were not legally laid out; and therefore it is his opinion that they extend to.the middle of the streets that bound them. This opinion conveys not title to the streets in question and is of no importance.

Later on Ezra Bliss conveys some of this property to George Roberts. The date of that conveyance is in 1861, And he describes the property as bounding on all these streets—Fourteenth, Fifteenth, and Jefferson—"The premises above described being the same premises contracted to be sold by me, the said Bliss, to said Roberts, July 25, A. D. 1857, and now conveyed in pursuance of the agreement in said contract contained, together with all the privileges and appurtenances to the same belonging." This conveyance does not describe this lot by number, but by metes and bounds, and it bounds this lot by the easterly line of Fifteenth street extended and the northern line of Jefferson street extended. These two streets, it would appear from that description, were not yet opened, as he speaks of their lines extended as passing along and forming two of the boundaries of this property. Having gone around this property and described it by these bounds, he says: " Also all my right, title and interest in and to the land lying between the northwesterly side of the above bounded and described premises and the center of Fifteenth street extended." That deed was made in 1861. He did not assert in the deed that he owned a single foot of the land included in Fifteenth street. He bounds the land which he clearly did own by metes and bounds which are definite, precise and easily ascertainable, and mentions these very streets laid out on this map, and then says that he conveys all his right, title and interest in and to the street adjacent to the northwesterly side of the lot, being the thirty-three feet next adjoining. We do not think that this conveyance conveyed to Mr. Roberts any land in the street. To say " I convey to you all my right and title to any one of these streets," absolutely conveys nothing whatever unless he owned it. His grantor did not undertake to claim, and did not say by his conveyance, that he owned any of the street, but he casts a doubt upon the laying out of these lots, and for that reason he thinks they extend to the center of the street, an expression of no consequence whatever.

I need not go any further over that part of the case. We are clearly of opinion that the evidence in this case certainly shows that the plaintiff here under these conveyances acquired no title to any part of the land within the limits of Fifteenth street, as shown upon the Gower map, and by the acts of his predecessors is clearly estopped from disputing the legal dedication of that street. Everything the law required the city to do, it did to accept the dedication of this property for these streets. It is held by the council for such purpose unless they have lost it by reason of adverse possession. On that subject the proof in this case is a little different from that in the other cases. There is no evidence in this case that we have been able to discover in looking over this testimony that shows that the plaintiff is in posssession of this property, or was at the time of the commencement of this suit. But his predecessors in title have had some possession of it. There is no doubt that there has been a greater part of the time a fence along on Jefferson street, and that there was a fence somewhere near the middle of Fifteenth street, running back to the territorial road, so-called, and that there was also a fence along the territorial road; but the evidence is exceedingly indefinite and indistinct as to whether those fences have been maintained continuously during twenty-one years next preceding the commencement of this action. Notwithstanding the fact that Mr. Roberts testifies that he kept up the fence there, and that there was an old fence there when he went in possession, which he kept up, the evidence is positive and distinct that people were driving through, on both sides of that center fence run-

ning down Fifteenth street, between 1867 and 1877. The evidence is that they were driving on the east side of it part of the time, and I think that there is evidence showing that they were driving on the west side—driving on the Scott property next to it. We have in the decisions of the courts of Ohio, especially in 13 O. S., 42, decisions that such a possession would not give title to the plaintiff as against the city. And this court has held the same in a case almost as strong, relating to one of these streets. There does not appear anything in the testimony of Mr. Roberts to show that by his occupation and possession of the property he was intending to assert his title to it and deprive the city of it. He went there and found this property fenced as it had been, with an old rail fence, and he used it just as it was fenced, and he finally improved the property. He put up a new brick house in place of the frame one first there, and he kept the lot up, but he allowed this fence to go into decay and become out of repair until it seems clear that citizens traveled through there, back and forth, along Fifteenth street at this place at will; perhaps not as regularly as they do now, but as often as they wanted to.

So we do not think that the plaintiff has made out a case showing that he has acquired title by adverse possession.

Therefore the petition of the plaintiff will be dismissed.

*C. W. Everett* and *C. S. Ashley*, for Plaintiff.

*C. F. Watts, H. A. Merrill* and *J. H. Tyler*, for Defendant